UNITED STATES

v.

CLAIBORNE.

No. 84–1294.

United States Court of Appeals,
Ninth Circuit.

Dec. 30, 1985.

FERGUSON, Circuit Judge, dissenting from the order denying hearing *en banc.*

The refusal of the court to rehear this case *en banc* is lamentable. When the prosecution withholds vital exculpatory information, justice is denied. Rehearing *en banc* is necessary to correct the substantial curtailment of a defendant's right to discover impeachment material pursuant to the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Defense access to exculpatory or impeachment evidence within the government's possession is a vital constitutional and statutory right. *See Brady,* 373 U.S. at 87, 83 S.Ct. at 1196; *United States v. Polizzi,* 500 F.2d 856, 893 (9th Cir.1974) ("The prosecution is obligated to disclose to the defense statements falling within the Jencks Act regardless of anyone's perception of the utility of the statements for impeachment."), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). Impeachment evidence plays a pivotal role in any trial, *see, e.g., Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), and withholding impeachment evidence in this case denied the defendant an effective defense.

Claiborne, a United States district court judge, was convicted of income tax evasion. His accountant, Wright, was an important prosecution witness. At trial, Claiborne presented evidence that his secretary delivered a letter to Wright revising the amount of his income. Wright testified that he had no recollection of receiving the letter and further that he never lost client files.

Thus, Claiborne's conviction hinged on Wright's credibility. Regrettably, the government and the trial judge failed to furnish Claiborne during the trial with damaging pretrial statements made by Wright.

Government agents' summaries of pretrial interviews with Wright indicate that he admitted to them that a substantial number of his client's files had been "thrown away." Despite a standing request under the Jencks Act and *Brady* for witnesses' pretrial statements, the defense learned of the summaries only after trial. At a posttrial hearing, the trial judge disclosed the existence of the summaries of the Wright interviews.

Although the judge reviewed some of the *in camera* material during trial, he examined none of the Wright material at that time. At the posttrial hearing, he reviewed some of the Wright material and concluded that none of it was Jencks Act or *Brady* impeachment material. Further, he failed to examine the remaining *in camera* material, some of which might have impeached Wright's testimony.

On appeal, the panel admitted that the Wright summaries were *Brady* impeachment evidence, but erroneously concluded that the failure to disclose the material was not prejudicial to the defense. *United States v. Claiborne*, 765 F.2d 784, 802–04 (9th Cir.1985). The panel's *Brady* analysis ignored *United States v. Bagley*, — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), announced six days before *Claiborne*. Under *Bagley*,

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Id.* at 3384. The panel should have decided whether suppression of the Wright interview material "undermined confidence in the outcome of the trial." Instead, the panel employed a two part test: whether the evidence would have "created a reason-able doubt" or whether it "might have affected the outcome" of the trial. *Claiborne*, 765 F.2d at 802–03.

Ample evidence from the record supports the conclusion that suppression of the material undermines confidence in the trial outcome. Wright was a key witness in the government's case. Evidence that a significant number of his clients' files had been discarded, directly contradicting his earlier testimony, would certainly undermine his credibility sufficiently for the jury to conclude that the defendant had testified truthfully. Thus, Claiborne's conviction should have been reversed because the government withheld *Brady* impeachment evidence of one of its key witnesses.

Similarly, the panel's Jencks Act analysis was incorrect. The panel denied Claiborne access to the Wright summaries because they were not transcribed "in a substantially verbatim fashion" and the government agents did not draft them contemporaneously with Wright's interview. *Id.* at 801. After *Claiborne*, the government need only produce 18 U.S.C. § 3500(e)(1) statements actually read or drafted by the witness, and 18 U.S.C. § 3500(e)(2) statements drafted by an agent before the interview is over. This reasoning conflicts with *Campbell v. United States*, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963), and significantly reduces a defendant's ability in this circuit to obtain witness statements taken by government agents.

Under *Campbell*, section 3500(e)(1) statements need not be signed or written by the witness, or even be a substantially verbatim recording of a prior statement. *Id.* at 492 n. 6, 83 S.Ct. at 1360 n. 6. The Court held that the FBI agent's recitation of the "substance" of his rough notes, which were "not a complete word-for-word transcription" of the interview, demonstrated sufficient adoption by the witness for purposes of the Jencks Act when the witness told the agent "he had got it straight." *Id.* at 489–90, 83 S.Ct. at 1359–60. The FBI agent wrote his report, based on rough notes and personal memory, seven hours after the witness interview. *Id.* at 490, 83

S.Ct. at 1359. The Court imposed no requirement or expectation that the agent draft a witness statement during an interview. Rather, *Campbell* recognized the informal and commonplace FBI practice of taking rough notes during an interview and later transcribing them into statements. This practice in *Campbell* made the witness statements no less susceptible to disclosure under the Jencks Act.

The fundamental error the panel committed was its failure to conduct an independent examination of the materials on which the trial court based its rulings. I fail to see how the panel, without looking at that material, could have fairly decided whether those rulings were erroneous. A reviewing court has an obligation to examine *Brady* and Jencks Act material to ensure that the district court's rulings were correct. *See Campbell*, 373 U.S. at 493, 83 S.Ct. at 1360. After the district court judge opened the *in camera* material at the posttrial hearing, he resealed the withheld documents. The documents have not been unsealed or read by anyone since the district court's posttrial hearing.

The *en banc* call in this case has been difficult for the judges of this circuit. It may be that hearing the case *en banc* and potentially reversing the conviction would be viewed by the public as defending one of our own rather than fairly applying the law. However, a defendant's right to a constitutionally fair trial cannot be balanced against the perception of others. Of course, we have an obligation to ensure that the circuit's actions are evenhanded and unbiased. But that duty is not jeopardized here. We must uphold our responsibility to remedy violations of constitutional rights, and I dissent from the court's refusal to hear this case *en banc*.